# EXHIBIT A

IN THE COURT OF COMMON PLEAS
FOR HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TYRONE SIMS<br>1630 Ardwick Ln.<br>Springdale, OH 45246 | )<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>)<br>) | |
| MAPLE KNOLL COMMUNITIES, INC.<br>11070 Springfield Pike<br>Spingdale, OH 45246 | )<br>)<br>)<br>) | **COMPLAINT FOR<br>DAMAGES AND<br>INJUNCTIVE RELIEF** |
| **Serve also:**<br>MAPLE KNOLL COMMUNITIES, INC.<br>11100 Springfield Pike<br>Cincinnati, OH 45246 | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| -and- | ) | |
| MAPLE KNOLL COMMUNITIES, INC.<br>Corporate Office<br>11275 Springfield Pike<br>Cincinnati, OH 45246 | )<br>)<br>)<br>)<br>) | |
| -and- | ) | |
| MAPLE KNOLL COMMUNITIES, INC.<br>c/o GH&R Business Services, Inc.<br>Statutory Agent<br>312 Walnut Street, Suite 1800<br>Cincinnati, OH 45202 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

Plaintiff TYRONE SIMS by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

## PARTIES

1. Sims is a resident of the city of Springdale, Hamilton County, Ohio.

2. Defendant MAPLE KNOLL COMMUNITIES, INC., ("Maple Knoll") is a domestic-incorporated, for profit company that conducts business throughout the state of Ohio. The relevant location of the events and omissions of this Complaint took place was 11070 Springfield Pike, Springdale, Ohio 45246.

3. Maple Knoll is, and was at all times hereinafter mentioned, Sims' employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C §2000e, the Americans with Disability Act ("ADA") 42 U.S.C. § 12101, the Family Medical Leave Act ("FMLA"), and the Families First Coronavirus Relief Act ("FFCRA").

## JURISDICTION & VENUE

4. All of the material events alleged in this Complaint occurred in Hamilton County, Ohio.

5. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and/or (3).

6. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

7. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

8. Within 300 days of the conduct alleged below, Sims filed a Charge of Discrimination with the Equal Employment Opportunity Commissions (("EEOC", Charge No. 473-2021-00480) against Maple Knoll ("EEOC Charge").

9. On or about May 12, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Sims regarding the EEOC Charge.

10. Sims has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue Letter.

11. Sims has properly exhausted all administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

12. Sims is a former employee of Maple Knoll.

13. At all times noted herein, Sims was qualified for his position with Maple Knoll.

14. At all times noted herein, Sims could fully perform the essential functions of his job, with or without a reasonable accommodation.

15. Sims is African American, placing him in a protected class for his race.

16. Sims worked for Maple Knoll as a Security Officer from March 2019 until Maple Knoll wrongfully terminated Sims' employment on or about April 9, 2020.

17. In or around April 2, 2020, Sims was confronted by his coworker, Scott LNU (Security Officer, Caucasian).

18. Sims had changed a few settings on a computer and was watching the news during his down time. This angered Scott LNU, who turned to Sims and threatened to "knock [him] out."

19. Shocked, Sims attempted to deescalate the situation.

20. Security Officer Michael Ward (African American) also witnessed this event and helped deescalate the situation.

21. Sims reported this situation to his superiors. This was a protected complaint of unsafe working conditions.

22. On or about April 3, 2020, Supervisor Debbie McCrainer (Caucasian) approached Sims about a misplaced security tag for a resident's door. McCrainer said that Scott LNU approached her about this mistake and wanted to address it with Sims.

23. Sims interpreted this as a retaliatory action by Scott LNU against him for reporting Scott LNU's threat from the day before.

24. Sims explained to McCrainer that the tag had been placed correctly, per company protocol, and that Scott LNU's report against him was unreliable and retaliatory. Further, Sims told McCrainer that Scott LNU's seemed to be setting Sims up for failure.

25. On or about April 7, 2020, Sims fell ill with COVID-19 symptoms and was therefore in a protected class for his disability.

26. At the time, Sims' doctor told him that he did not qualify to receive a COVID-19 test, but that he needed to quarantine for fourteen days.

27. After speaking with his doctor, Sims called Maple Knoll to report his instructions to quarantine. This gave notice of Sims' protected disability class to Maple Knoll.

28. HR Representative Stephanie Goddard (Caucasian) called Sims on or around April 8, 2020, to check in on him. Goddard told Sims to keep Maple Knoll updated on his condition.

29. On or about April 9, 2020, Facilities Director Joe Volker (Caucasian) called Sims to follow up on the incident with Scott LNU from April 2, 2020.

30. Sims recounted the incident to Volker.

31. Volker mentioned that this is not the first time Maple Knoll had dealt with a report against Scott LNU.

32. In a similar situation, Scott LNU threatened and became hostile towards another African American man, Reggie Sawyer. Sawyer later resigned his employment at Maple Knoll due to Scott LNU's hostility.

33. Evidently, Scott LNU has a history and pattern of picking fights with Maple Knoll's African American employees.

34. Sims and other African American employees had repeatedly complained about Scott LNU's issues with African American individuals to McCrainer.

35. These reports were all protected complaints of discrimination.

36. On or about April 9, 2020, VP of HR, Beth Thrafe (Caucasian), called Sims and terminated his employment citing Maple Knoll's zero tolerance policy for violence.

37. Sims rightfully denied that he participated in any violence and insisted that he had not cursed or in any way encouraged violence at work. Sims clarified that it was Scott LNU who threatened violence.

38. Thrafe told Sims that both he and Scott LNU were being terminated because of the situation.

39. This was not Scott LNU's first offense.

40. Scott LNU, unlike his African American colleagues, was given multiple chances under this "zero-tolerance" policy.

41. Disparately, Sims was held to a different standard and fired after his first offense under this "zero-tolerance" policy, even though he was not the instigator.

42. Maple Knoll's purported reason(s) for Sims' employment termination was pretextual.

43. Maple Knoll actually terminated Sims' employment discriminatorily against his race, his disability, and/or to interfere with his rights under the FFCRA and the FMLA.

44. As a result of the above, Sims has suffered and will continue to suffer damages.

### COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII.

45. Sims restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

46. Sims is African American, and thus is in a protected class for his race.

47. Maple Knolls treated Sims differently than other similarly situated employees outside of his protected class, namely Scott LNU.

5

48. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

49. Maple Knoll's termination of Sims' employment was an adverse employment action against him.

50. Maple Knoll's purported reason(s) for Sims' employment termination was pretextual.

51. Maple Knoll actually terminated Sims' employment due to his race.

52. Maple Knoll violated Title VII by terminating Sims' employment because of his race.

53. Maple Knoll violated title VII by treating Sims different from other similarly situated employees outside his protected class.

54. Maple Knoll violated Titled VII by applying its disciplinary policies in a disparate manner based on Sims' race.

55. Maple Knoll violate Title VII by applying its employment policies in a disparate manner based on Sims' race.

56. As a direct and proximate result of Maple Knoll's acts and omissions, Sims had suffered and will continue to suffer damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

57. Sims restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

58. Sims developed COVID-19 symptoms in or around April 7, 2020, thus placing him a protected class for his disability.

59. Sims gave notice to Maple Knoll after receiving an instruction to quarantine from his doctor; therefore, Maple Knoll had notice of Sims' disability and protected class.

6

60. The ADA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

61. Maple Knoll treated Sims differently than other similarly situated employees based upon his disability.

62. Maple Knoll's termination of Sims' employment was an adverse employment action against him.

63. Maple Knoll's purported reason for Sims' employment termination was pretextual.

64. Maple Knoll actually terminated Sims' employment due to his disability.

65. Maple Knoll violated the ADA by terminating Sims' employment because of his disability.

66. Maple Knoll violated the ADA by treating Sims differently from other similarly situated employees outside his protected class.

67. Maple Knoll violated the ADA by applying its disciplinary policies in a disparate manner based on Sims' disability.

68. Maple Knoll violated the ADA by applying its employment policies in a disparate manner based on Sims' disability.

69. As a direct and proximate result of Maple Knoll's acts and omissions, Sims had suffered and will continue to suffer damages.

## COUNT III: RETALIATION

70. Sims restates each and every prior paragraph of this complaint, as if it were fully restated herein.

71. As a result of the Scott LNU's threats against him, Sims complained of the harassment and hostility he was experiencing.

7

72. Subsequent to Sims' complaints to his superiors about harassment and hostile treatment toward him, Maple Knoll took adverse employment actions against Sims, including, but not limited to, terminating his employment.

73. Maple Knoll's actions were retaliatory in nature based on Sims' opposition to the unlawful discriminatory conduct.

74. Pursuant to Title VII and the ADA, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

75. As a direct and proximate result of Maple Knoll's retaliatory discrimination against and discharge of Sims, he has suffered and will continue to suffer damages.

## COUNT IV: UNLAWFUL INTERFERENCE WITH FFCRA RIGHTS

76. Sims restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

77. Pursuant to the FFCRA, covered employers are required to provide employees job-protected, paid leave for qualified medical and family situations related to the COVID-19 pandemic.

78. Maple Knolls is a covered employer under the FFCRA.

79. Sims was an employee eligible for FFCRA due to his development of COVID-19 symptoms on or around April 7, 2020.

80. Maple Knoll terminated Sims' employment before Sims could apply for and begin receiving benefits under the FFCRA.

81. Maple Knoll intentionally terminated Sims' employment before he could apply for and begin receiving benefits to interfere with his rights under the FFCRA.

8

82. During his employment with Maple Knoll, Sims was unable to receive FFCRA benefits because of Maple Knoll's interference with his FFCRA rights.

83. Maple Knoll unlawfully interfered with Sims' exercise of his rights under the FFCRA in violation of the FFCRA.

84. As a direct and proximate result of Maple Knoll's conduct, Sims suffered and will continue to suffer damages.

85. As a direct and proximate result of Maple Knoll's conduct, Sims is entitled to all damages provided for in the FFCRA.

## COUNT V: INTERFERENCE WITH FMLA RIGHTS

86. Sims restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

87. Pursuant to 29 U.S.C. § 2601 et seq., covered employers are required to provide employees job-protected, unpaid leave for qualified medical and family situations.

88. Maple Knoll is a covered employer under the FMLA.

89. Sims was an employee eligible for FMLA leave due to the COVID-19 symptoms he developed on or about April 7, 2020.

90. Before Sims could apply for FMLA leave, Maple Knoll terminated his employment just two days later.

91. Maple Knoll unlawfully interfered with Sims' exercise of his rights under the FMLA in violation of § 105 of the FMLA and § 825.220 of the FMLA regulations.

92. Maple Knoll's refusal to provide Sims with information pertaining to FMLA leave and/or permit Sims to take FMLA leave violated and interfered with his FMLA rights.

93. As a direct and proximate result of Maple Knoll's conduct, Sims suffered and will continue to suffer damages.

94. As a direct and proximate result of Defendant's conduct, Sims is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

**DEMAND FOR RELIEF**

WHEREFORE, Sims demands from Defendant the following:

a) Issue a permanent injunction:
   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;
   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;
   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;
   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and
   v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge his personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Sims for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Sims' claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

__/s/ Matthew Bruce____
Matthew Bruce (0083769)
    Trial Attorney
Evan R. McFarland (0096953)
Brianna R. Carden (0097961)
**THE SPITZ LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:   (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Bianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Tyrone Sims*

## JURY DEMAND

Plaintiff Tyrone Sims demands a trial by jury by the maximum number of jurors permitted.

                                                  /s/ Matthew Bruce
                                                  Matthew G. Bruce (0083769)